We'll move now to the third case on the morning's call, the United States v. Fox. Ms. Bates. May it please the Court. The government concedes that Mr. Fox should be entitled to a resentencing under the U.S. Supreme Court's recent decision in Dean v. United States. That is undisputed. So at the very least, this case should be remanded. The only question remaining is whether Mr. Fox should also be entitled to new pretrial and trial proceedings because the district court committed a structural error when it arbitrarily denied Mr. Fox the counsel of his choice. Mr. Fox's right to the counsel of his choice is distinct from his right to counsel in a criminal proceeding generally. It is distinct from his right to a fair trial, and it is entitled to a presumption. To overcome that presumption, a district court that denies a continuance to a defendant so that he can secure the counsel of his choice must first adequately balance the factors on both sides of that consideration. If the district court fails to adequately balance the factors, then the denial is arbitrary. And an arbitrary denial is a complete deprivation of the right at the moment of the denial. The court has then committed a structural error, so there's no need for any kind of harmless error analysis or prejudicial analysis. And anything that happens after that point, whatever kind of assistance of counsel the defendant actually receives, is not relevant. In this case, the district court committed a structural error by arbitrarily denying Mr. Fox a continuance so that he could secure the counsel of his choice. Instead of adequately balancing the factors on both sides of that consideration, the district court gave only three reasons for denying. The first reason that the district court gave was that Mr. Fox had purportedly waived his right. About a month before the trial, Mr. Fox appeared because there was a superseding indictment, and he was entitled at that point to a statutory 30-day time period from the superseding indictment to the first day of trial. That statutory right is what he waived. He expressed at that hearing that he did not intend to waive it, but he was later convinced by his appointed counsel to go ahead and proceed with the February 16th trial. That statutory right did not have anything to do with Mr. Fox's Sixth Amendment constitutional right to the counsel of his choice. So I would contend that that first reason for denying the continuance is not a valid reason. It's not one of the factors that this court laid out in Williams, and it has nothing to do with the right of counsel. The second reason that the district court gave for denying Mr. Fox's continuance was that his substitute counsel that he was hoping to retain had not yet appeared and was not present that day. The district court went on to speculate that even if counsel did appear, that counsel would have no different strategy from appointed counsel. The court conceded that that was pure speculation, that she had no reason to know what the strategy of counsel was, nor should she, and that whatever the substitute counsel's strategy would be was unknown. That consideration has also been found by this court to be inappropriate, especially the weighing of whether substitute counsel's performance or strategy would be any different from appointed counsel, even if you were to assume that it was exactly the same. If a defendant wants a new lawyer, even to perform the exact same trial strategy, that's the defendant's prerogative. And so whatever the potential strategy is is not really a consideration against denying the continuance so that the defendant may have the counsel of his choice. The third reason that the district court gave for denying the continuance was because the court stated that 45 jurors had appeared for trial that day, the witnesses were ready, trial prep had been completed, and everyone else was set to go. That consideration is one of the Williams factors, and I would refer to it as the convenience of the court, which is a valid consideration and is, I would propose, the same consideration in every single case where this issue comes up. Any time a defendant wants new counsel, it's going to be disruptive, and it's going to be inconvenient to the court, potentially to the other lawyers, to the witnesses. So that consideration alone cannot be determinative. This court has said so many times, and where there is evidence from the context of the situation and from the reasons that the judge actually gives for denying that the court considers the convenience of the court to be determinative or is applying that too rigidly, then that constitutes an arbitrary denial and thus requires remand. I would also point out that Mr. Fox had voiced his concern throughout this case many times to the court that he was not satisfied with his counsel. He wrote letters to the court, he met with the magistrate judge about it, and he was persuaded time and again to continue with his appointed counsel. The court then knew at trial that there was some sort of problem with Mr. Fox's appointed counsel, and from the record all we know really is that they were having problems with communication. Mr. Fox's appointed counsel hadn't really communicated to his family that trial was imminent and hadn't done a good enough job to prepare them to retain substitute counsel in time for trial. So essentially, Mr. Fox's uncle testified that his family was attempting concretely to retain a specific new lawyer, and they simply ran out of time. And money. Well, there's not really any evidence in the record about the money. So Mr. Fox's uncle testified that the family was attempting to get together a retainer fee for the new lawyer, but the district judge did not ask anything about how much that retainer would be, how close the family was, how much money they had already collected, and how much time they thought they might need to accomplish that task. The district court instead relied on maybe one page of testimony from the uncle giving the broad concern and then asked the appointed counsel whether substitute counsel was intending to appear. The appointed counsel stated that as of that day, no, the substitute counsel was not ready to appear in the case. But I would point out that that is an unusual circumstance, I think, to have a defendant who is asking for new counsel, who has complained about his appointed counsel, has to rely on his appointed counsel to advocate for him in this specific instance to get new counsel. And if, for example, the appointed counsel doesn't do an adequate job of that and for that reason the continuance is denied or doesn't have much of an interest in pursuing that claim for one reason or another, then the defendant is really advocating for himself, which I would argue Mr. Fox was not really in a position to do at that point. He was incarcerated out of state. He was appointed a lawyer because at the beginning of the case he himself could not afford his own lawyer. But there's no evidence in the record about whether or how much more time his family would have needed to retain counsel on his behalf. And they had taken concrete steps to do so by reaching out to a specific lawyer. It would not have taken the district court much time at all to elicit more testimony or to inquire further or even to give that substitute counsel a call, to have counsel step out into the hall and ask that day what was going on and what the plan was. But the absence of that evidence in the record really shows that the district court didn't even develop that evidence, so how could she have waited in denying Mr. Fox the continuance? Because Mr. Fox is entitled to a presumption on this point, I would contest that it was really the district court's obligation to press that point and develop and figure out what was Mr. Fox's concern, what were the logistical problems, what were the practical solutions that they might come to, because some of the considerations that should have come out that didn't were that the trial was pretty simple. It was two days. It wouldn't have been very much to reschedule. Mr. Fox had not. There was no evidence that he had tried to request counsel as a delay tactic or that he didn't genuinely have concerns about his appointed counsel and want new counsel, and whatever his reasons for wanting counsel were are also his prerogative. So any argument that the government has made about how adequate his appointed counsel was in reality are irrelevant, because the consideration that this court has required of district court judges is to do a balancing of the Williams factors, and they're not rigid checklist factors, but the fact that there were only really two articulated in the record here and that one of them comes up every time shows that the district court didn't actually consider what harm to Mr. Fox would happen if he were to proceed with his appointed counsel or what even the inconvenience to the court would be if they delayed and allowed him to retain the counsel of his choice. Ms. Bates, you mentioned that the defendant from the very beginning, or relatively from the beginning, wanted new counsel. What's the time frame from that beginning complaint until we get the possible intervention of the family to get new counsel? Mr. Fox first wrote a letter to the court on July 29, 2015, and then in January of 2016, the government issued a second superseding indictment. So at that hearing, it came up that Mr. Fox was interested in retaining new counsel, but he didn't have enough information at that point to know how likely it was that he would succeed in retaining counsel. There's no evidence in the record that he knew which attorney he was seeking or whether he had communicated with his family about it. And so at that hearing, when he voiced potentially that he might want new counsel, the court was on notice that this could be an issue. The court did not inquire about it again until the morning of trial when Mr. Fox raised it. So what's that total time? From July 2015 until January 2016. Twenty-something. And then it was one month from, not even, it was really three weeks from that hearing until trial. And so assuming that Mr. Fox's family, which we don't know, found out at some point that he wanted new counsel, they were frankly scrambling to coordinate and get the money together. And to have a family who's not familiar with the law, who doesn't maybe know a lot of lawyers, I feel that would be a very daunting task to try to accomplish in so short a time. And all that Mr. Fox was asking for was more time for them to try to accomplish that. That's what I wanted to make a little inquiry of you. Is your position that the judge just should have given more time, or is it your position in this kind of a case, a district judge against the background of the several months that you've talked about, has to make a detailed inquiry into the likelihood of new counsel appearing? And I don't know what kind of inquiry you would specifically request, but where is the focus here? What do you want us to see? That the judge just should have said, all right, 30 more days and we'll reschedule? Or is your argument that a district judge in this setting has to start some kind of independent inquiry into the likelihood of this new family retained counsel coming into the case? Under this circuit's precedent, Your Honor, the district court is required to weigh the factors. The court does not need to grant the continuance. They can deny it. But before the court denies the continuance, there has to be in the record an explanation of why. And that explanation cannot consider only one side of the equation, which in this case were all of the reasons against Mr. Fox. The court also has to articulate, and if it doesn't know, then elicit testimony or evidence to develop the reasons on the other side of that equation. The district court here failed to do that, and for that reason, I would ask that this case be remanded for new pretrial and trial proceedings. I'd also like to note that the two issues that I've not addressed, the defective indictment issue and the crime of violence issue, we have raised just to preserve and we understand that circuit precedent is against us. If there are no other questions, I'll reserve the balance of my time. Thank you. Thank you, Ms. Bates. We'll hear now from Mr. Ritz. May it please the court. Brian Ritz for the United States. Before moving to the adequacy of the district court's findings, I would like to make two points of clarification. First, Judge Flom, about the timing. Essentially, the court did give Mr. Fox a month. He gave Mr. Fox a month from January 20th. Mr. Fox said at that point in time, the final pretrial hearing, he said my family is seeking new representation. That's at page four of the final pretrial conference hearing. Apparently something happened after that, though. What happened was that Mr. Fox evidently didn't think that was going to happen and waived to 30 days from the superseding indictment. So not only did he have the 30 days, but he could have had more if he wanted them, but he waived that final continuance. So the judge had every reason to suspect that no new representation was going to happen and whatever had happened, whatever his family had sought to do had failed. Then the morning of trial, we come in. Something happened between the waiver of the 30-day period and the first day of trial, right? I guess, I mean, I suppose if you're taking the facts most favorable to Mr. Fox, I think the court would have been reasonable to think that this was a delaying tactic because Mr. Fox, I would point the court to page 12 of the transcript. He says that he wouldn't have granted the continuance if he had known his family was going to seek representation, but of course that was the reason that he gave the court on the final pretrial conference and the district court judge said, well, that's contrary to what you told me at that point in time. Second, I would like to clarify there is evidence in the record that Mr. Fox's family did not have the funds. I would quote, this is on page 8 of the transcript, his uncle said, we don't have the money yet right now. The district court was reasonable to credit that as a statement that there were no funds. So this puts us right into the Sinclair analysis where we have the morning of trial a speculative and highly contingent hope that an attorney might appear. For those reasons, the court's three findings were more than adequate to balance in favor of the administration of justice and continuing on with the trial that morning. I would like to talk about those factors a little bit here. While Mr. Fox here has said that the trial calendar is always a factor, that's not what this court has said timing-wise. I would again cite this court to Sinclair. As this court recently said in Sinclair, these things become more disruptive. Delays become more disruptive the closer you get to trial. The closer one gets to trial, the interest of the government, the witnesses, the jurors in the court and the court schedule become more compelling and that is at its most compelling the morning of trial when here you've got 45 jurors and nine witnesses plus the court staff. The inconvenience to all those people and parties is at its highest the morning of trial. Now, certainly that is insufficient by itself, but you couple that with Mr. Fox's highly contingent hope to get an attorney. He had no attorney retained. He had no money to find that attorney and no hope. So on that, the government will compare to Sinclair. In Sinclair, it was also a highly contingent, but at least in that case, the defendant came in with an identifiable time frame, asked for 21 days continuance because he would have the money in 7 to 10 days, along with an identified source of income, the tax return. Here we have neither. So I think what we're left with is what Judge Flom has touched on. Mr. Fox is essentially arguing for requirement that the district court judge do the work for Mr. Fox, but the district court, I think it's important to note here, did a lot. The district court talked to Mr. Fox, talked to Mr. Fox's uncle, and talked to Mr. Fox's attorney, and all the parties said there is no attorney present at this point in time. Before I sit down, I would like to reset again with the standard review. To win this case, Mr. Fox has to show an unreasoned and arbitrary insistence on expediency in the face of a justifiable request for delay. The district court's findings grounded in the facts in the record, grounded in what she heard from the parties in the month before and the morning of trial, were neither arbitrary nor unreasoned. And Mr. Fox's last-minute, 11th-hour request of highly contingent hope to possibly retain an attorney was not justifiable for the delay here. If there are no further questions, the government would ask that this court affirm, with the exception of the remand for resentencing. Thank you. Thank you, Mr. Reitz. Ms. Bates, you have a minute and a half. Thank you. Very briefly, Mr. Fox was not seeking to delay trial. There was no reason for him to delay trial, and there's no evidence that that was the reason that he was asking for new counsel. There is evidence that he wanted substitute counsel and that his family was making concrete steps in that direction. Mr. Fox was not without hope. There is not evidence that this family would never be able to retain counsel or afford counsel, and there's not even evidence of how much time he would need to do so. The district court didn't ask how long a continuance Mr. Fox would even need. I'm not advocating that we require a district court to do the full inquiry every time because this court has said that it's a holistic view of not just the reasons given but also what's going on in the case and what would be reasonable to expect. I don't think that it's unreasonable to ask a district court to at least weigh out the factors that this court has recommended and adequately explain in the record both sides. If Mr. Fox wanted new counsel, that was his prerogative, and he was entitled to a presumption. Because the court here did not do that adequate weighing, its denial was arbitrary. It constituted a complete deprivation of Mr. Fox's right. It was a structural error, and thus Mr. Fox's case should be remanded for new pretrial and trial proceedings. Thank you. Unless there are other questions? Ms. Bates, you served by appointment of the court, I believe. Yes. Well, you are the next Jedder and Block lawyer to have served this court with distinction and your firm's pro bono service to the court, and you and your firm have the deep thanks of the court for your service today. Thank you, Your Honor. The court will now take...